**GEORGE W. WARNER & CO., Inc.,**
**Plaintiff,**

v.

**The BLACK & DECKER MANUFACTURING COMPANY, Inc. and Gus F. Fischer, Defendants.**

Civ. A. No. 19039.

United States District Court
E. D. New York.

Dec. 1, 1958.

Milbank, Tweed, Hope & Hadley, New York City, for defendants, A. Donald MacKinnon and Edward J. Reilly, Jr., New York City, of counsel.

Daniel Kornblum, New York City, for plaintiff.

BYERS, Chief Judge.

These are cross-motions, the first by defendants who invoked Fed.Rules Civ. Proc. rule 12(e) and (b) 28 U.S.C.A., to obtain a more definite statement in the complaint as to plaintiff's first alleged cause, and dismissal as to the second and third, for failure to state, etc.

The second is by the plaintiff for an injunction pendente lite.

They will be disposed of in one decision.

The plaintiff was a wholesale distributor of the corporate defendant's products (portable electric power tools, equipment and accessories) for about thirty years, or until August 6, 1958 when the existing distributor discount was withdrawn by written notice.

The basis of the plaintiff's so-called franchise was an oral agreement, terminable at will by either party.

The undisputed reason for this action was that the plaintiff chose to sell at lower than the resale prices suggested by defendant. The arguments pro and con are addressed to the question of whether the defendants thereby violated any legal rights of the plaintiff, thus bringing the controversy into sharp focus.

The complaint was filed September 22, 1958, the motions were heard on November 19th, and all briefs were filed one week later.

The defendants' motion is made prior to the filing of an answer.

The complaint asserts that jurisdiction is based upon the Sherman Act, the Clayton Act, and the Robinson-Patman Act, 15 U.S.C.A. § 1 et seq. Since the plaintiff is a corporation of New York, and the corporate defendant is of Maryland, diversity is present. The individual defendant is an employee of the latter as Manager of its New York and Newark officers.

The First cause charges that the defendants " * * * by agreement and understanding with certain of their distributors, by economic coercion of their distributors, by combination and conspiracy with them, and by defendants' artifice, scheme and plan, restrained and sought to and attempted to restrain trade and commerce between the states and lessen and prevent competition by arbitrarily and artificially fixing, controlling, regulating and maintaining minimum sales prices on bids submitted by their distributors on government orders and contracts for the purchase of products manufactured by the defendant corporation, including among said products those items which alone are manufactured by the defendant corporation." This seems to limit the alleged conspiracy to a certain field of distribution.

What might be conveniently called four overt acts in pursuance of the objects of the alleged conspiracy, are set forth in the paragraph from which the quotation is taken.

Thus it will be seen that a conspiracy is charged on the part of the corporate

defendant, its New York Manager, and certain of its distributors who are not named.

No one argues that the corporate defendant did not have the legal right to suggest to its distributors the prices that it deemed appropriate for the resale of its products, and to base its discounts thereon.

■ What it did not have the right to do was to agree and conspire with any of its distributors so as to prevent the plaintiff from being able to purchase defendant's products on the same basis as they did. Therefore if the defendant is to meet the conspiracy charge, it is entitled to know who the parties to the conspiracy are alleged to have been.

■ That the corporate defendant could not conspire with its own Manager, acting within the scope of his authority, has been decided: Nelson Radio & Supply Co. v. Motorola, Inc., 5 Cir., 200 F.2d 911, certiorari denied 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356.

There are District Court decisions to the same effect.

The other parties to the conspiracy as alleged, should be named, in order that the defendant may be fairly apprised of the issue that it is called upon to meet in that aspect of the plaintiff's cause.

As to this, the decision is in favor of the defendants, and the plaintiff is required to amend its complaint so as to allege definitely by name and address, the various distributors who are said to have been parties to the conspiracy of which plaintiff complains; also the place where, and the approximate date when, each of said distributors is alleged to have become a member of the "combination and conspiracy."

The other branches of the defendants' motion are addressed to the second and third causes.

■ The Second is difficult to describe in clear language. Seemingly it is aimed at a plan for quantity differentials in price based upon volume of sales, whereby two divisions of the distributors' customers were recognized.

For instance, sub. (a) of paragraph 13 asserts that there were two scales of resale prices or mark-ups, one being higher than the other "but both being for the selfsame kind and quality of said products"—a higher price being charged as to the smaller volume purchasers. This plan is alleged to have been implemented by requiring distributors to file lists of their customers with the defendant; and by threats of cancellation to hold the distributors to a recognition of the two-scale plan.

This is said to have caused the plaintiff irreparable injury. In parenthesis it may be observed that the plan started in 1954, so that the irreparable injury took about four years to become manifest.

The plaintiff's opposing affidavit thus defines the Second cause:

"* * * The gravamen of this action is that (1) defendants' illegal resale price fixing plan and scheme also extended to the sales of B & D products by their industrial distributors, including plaintiff, to their regular customers and trade, and, moreover, (2) the resale price scales imposed by defendants compelled the distributors illegally to discriminate between their small and large customers in the selfsame trade (complaint, para. 13)."

Aside from the failure to allege facts which would support a claim for damages, there is no allegation that the two-scale price suggestions operated to cause discrimination among plaintiff's customers upon other than a quantity or volume of purchase basis.

Since it is a recognized commercial practice to quote lower unit prices for large scale purchases than upon small, it is not perceived that any violation of any statute mentioned in the complaint is asserted in the Second cause as pleaded. The reference therein to this conduct as having been part of the alleged

conspiracy, does not introduce a new and separate cause of action, or claim for relief.

Since an amended complaint is contemplated by this decision, it would be for the plaintiff to elect to plead this alleged joint action as an overt act in pursuance of the alleged conspiracy proclaimed in the alleged First cause, if it be so advised.

In its present form the plaintiff's Second cause is not seen to state a claim upon which relief can be granted; hence as to this, the defendants' motion is granted, with leave to plaintiff to serve an amended complaint if indeed facts can be pleaded which are legally sufficient to survive proper scrutiny.

■ The Third cause asserts discrimination against the plaintiff since it has ceased to enjoy its "oral franchise" (complaint, para. 6) in the matter of prices of defendants' products, i. e., discounts from list or recommended prices, as contrasted with those paid by distributors who continue to enjoy the so-called franchise.

Obviously this is a subject which cannot be disposed of by motion. Whether the plaintiff has suffered in this connection as to interstate transactions, is the subject of dispute in the opposing affidavits. The question of fact is also presented as to whether the defendant has refused to sell to plaintiff on any terms, so as to constitute a complete and final severance of dealings, within the cases cited on page 8 of the defendants' brief.

Until the factual situation can be established as the result of taking testimony, the motion to dismiss, or in the alternative for summary judgment, is denied.

■ Turning now to the plaintiff's motion for an injunction pendente lite, the second motion, it will be apparent that the plaintiff seeks to induce the court to direct pro tanto, the operations of the defendants' business, which is a large undertaking and would be justified only under the most exigent of circumstances.

The relief sought is " * * * a temporary restraining order and preliminary injunction * * * enjoining the defendants * * * from in any manner discriminating against and interfering with the plaintiff in the lawful purchase, sale and disposal of defendant corporation's products, from fixing and controlling or attempting to fix and control the resale prices by plaintiff of said products, and from refusing to deal with the plaintiff and sell to it said products at the same prices, terms and conditions as afforded by defendants to other distributors of said products in the same trade, * * * *."

The problem presented by the entire controversy is an elusive one, as is attested by the many decisions of state and federal courts involving the extent to which the law will sanction the efforts of a manufacturer to direct the course of conduct of his distributors; and the efforts of the latter to police the exercise by the producer, of the right to pick and choose his customers.

This reaching over by each into the affairs of the other, renders the establishment of a balance between these conflicting urges, a tenuous undertaking at best, and one with which the law may not be entirely adequate to deal.

The status of the plaintiff as a distributor of the corporate defendant's products for about thirty years, has resulted in the creation by it of a good will among its own customers, which it asserts it is now faced with losing, in whole or in part.

The desire to preserve that status is understandable, but the fact that it has always been of indeterminate duration by mutual consent, has its place in an understanding of the situation that has arisen.

It appears that the initial right to terminate the relationship of the parties was not forced by one upon the other, but was freely established by joint action, and therefore the possible exercise of that right by either was neces-

'sarily in the contemplation of the other, down through the years.

The most that can be argued for the plaintiff is that a species of good faith constrained both parties not to terminate the dealership except for just cause; but that is a mere begging of the question which is implicit in the controversy as a whole.

The assertion of irreparable injury will not withstand an analysis of the opposing affidavits: The plaintiff asserts that its annual gross sales are of about $2,000,000.

Its volume of business with the defendant expressed in its selling prices has averaged for three years, $60,000, so that in dollars the sale of the corporate defendant's products has been about 3% of its entire business; that enterprize includes the distribution of many products manufactured by competitors of the defendant.

These figures dispel the illusion of irreparable damage.

As to factory repair service since last August, the issue is too closely drawn to be disposed of on the basis sought by plaintiff.

The granting of an injunction pendente lite would come close to a decision in limine on the merits, of the searching issues in the case. Such a determination can only wait upon the evidence, if a fair and equitable decree is finally to emerge.

The argument has not been overlooked that the public interest is at stake, since a sale to the Housing Authority at less than defendants' suggested prices, is what led to the termination of the plaintiff's status as a distributor for the defendant.

The entire subject of preferential prices to any government or to any of the so-called governmental agencies, is too obscure to admit of even an a priori disposition on an application for a temporary injunction.

It is true that the government is thought to be entitled to a better price than an ordinary purchaser, for reasons that are not always clear; but when the government goes into business in competition with private enterprize, that principle may not be found to hold true.

In any case the issue cannot be resolved unless testimony pro and con is submitted for the assistance of the court in reaching a decision.

The plaintiff's motion for a temporary injunction is denied.

Settle separate orders as to each motion, in accordance with the foregoing.