**GEORGE W. WARNER & CO., Inc.,**
**Plaintiff,**

v.

**BLACK & DECKER MANUFACTUR-**
**ING COMPANY, Inc., and Gus**
**F. Fischer, Defendants.**
**Civ. A. No. 19039.**

United States District Court
E. D. New York.
April 16, 1959.

Daniel Kornblum, New York City, for plaintiff.

Milbank, Tweed, Hope & Hadley, New York City, for defendants. A. Donald MacKinnon, New York City, of counsel.

BYERS, Chief Judge.

This is a defendants' motion addressed to the amended complaint filed January 7, 1959 following the decision of this court of December 1, 1958, reported in D.C., 167 F.Supp. 860.

The relief sought is a dismissal of the three causes as now pleaded (F.R.Civ.P. 12(b), 28 U.S.C.A.), or for summary judgment on the third cause for lack of

a genuine issue as to any material fact; and for such other relief, etc.

It is not proposed to rehearse what has been already written concerning the general nature and apparent scope of the controversy between these parties, and reference to the said opinion will be confined to the plain necessities of this motion.

The plaintiff's present brief contains the following:

"*The core of the case: illegal and predatory price fixing*

"The basic challenge of the complaint is to the vertical and discriminatory price fixing plan and scheme by defendant Black & Decker (called "B&D" herein), whereby B&D not only illegally maintains and controls the resale prices charged to the regular trade by certain of its named distributors of its industrial line of tools, equipment and parts, but also dictates and manipulates the resale prices charged by those distributors on government purchases of B&D products."

The brief continues for some thirty pages to argue the merits of the plaintiff's claim for relief.

The present task of the court is to examine the pleading as such, to ascertain if it is adequate to present triable issues.

■ The first paragraph asserts the filing of the complaint under the Clayton Act, 15 U.S.C.A. § 12 et seq., the Sherman Act, 15 U.S.C.A. § et seq., and the Robinson-Patman Act, 15 U.S.C.A. § 13 et seq. The next seven paragraphs purport to describe the corporate defendant, its plant and several officers (incidentally that it proclaims itself, and on information and belief that it is "the world's largest and predominant manufacturer of portable electric power tools, equipment and accessories" [1]).

1. If this is meant to ascribe to the defendant B & D the status of a monopoly, it is legally insufficient in the opinion of this court.

Also comprehended is the description of the defendant Fischer as a District Manager of its New York office; the widespread use of the defendants' products, and its sale thereof to distributors, and the resale thereof; and the place that appliances, parts and equipment occupied in the business of the defendant. That the B & D two-inch portable electric hammers with self-contained electric motor are alone manufactured by the defendant. That would seem to be an obvious thing, and free from any taint of illegality.

The next three paragraphs recite the plaintiff's corporate status, and its business activities; also its relations to defendant prior to August 6, 1958.

The foregoing may be thought of as descriptive and as introductory to the controversy.

Paragraph 12 refers to the 30% discount to wholesale distributors in general, in the New York and Newark areas, among which was the plaintiff, until the date last mentioned.

Paragraph 13 contains a list of seven distributors other than plaintiff, followed by the words "(The above designated distributors are hereinafter called 'competing distributors')."

The asserted first cause of action is found in paragraphs 15 to 23 inclusive.

15 alleges bidding for purchases by governmental agencies of such devices, the specifications "for descriptive or other like purposes," (a cryptic expression) "often expressly designate products and accessories of Black & Decker by name as being the kind and quality of tools, etc. required by them."

16 alleges that the course of such trade "has been predicated upon free, competitive and non-collusive bidding by the prospective sellers thereof, the government contracts to purchase the same being awarded to the responsible bidder offering to sell and deliver the required articles at the lowest price."

17 alleges that in June 1957 the defendants in order to control and restrain competition between "competing distrib-utors" including plaintiff, devised etc. a plan and scheme artificially fixing and controlling minimum sales prices on such bids, to which plaintiff was expected to adhere.

18. In furtherance thereof, five specifications are pleaded:

(a) Surveillance and report concerning any distributor who failed or refused to adhere to such minimum prices.

(b) Threats to blacklist and boycott such distributors.

(c) Threats to cancel the distributorship of such distributors.

(d) Threats to reduce or eliminate the 30% discount of such distributors.

(e) Require all distributors "to ascertain and clear with Black & Decker District Office" under Fischer's management, such minimum prices.

19. "In effect the price fixing plan and scheme described in paragraphs 17 and 18 above was and is the product of and results in agreement, understanding, combination and conspiracy by and between Black & Decker, Fischer and its distributors as aforesaid to restrain competition and lessen trade and commerce in the sale of goods and commodities among the several States of the United States and the District of Columbia."

20, 21, 22 and 23 may be paraphrased to recite the submission of a bid by plaintiff to the New York City Housing Authority on July 16, 1958 at a lower price than any of the other "competing distributors" who also submitted bids. That on July 22, 1958 Fischer threatened that unless plaintiff's quoted prices were to be revised to conform to the scale suggested by defendant, plaintiff would cease to be a B & D distributor. That plaintiff received the contract from the Housing Authority as the lowest bidder on July 30, 1958. That on August 6, 1958 plaintiff's distributorship was terminated by defendant. That this was done pursuant to the price fixing scheme, combination and conspiracy in restraint of trade as alleged.

It will be seen that the plaintiff's real grievance is the loss of its distributorship, which as has been heretofore explained, was terminable at the option of either party.

The first complaint was inadequate to charge a conspiracy between the defendant and any named person or persons, so that a clear issue on the subject could be framed for the purpose of a responsive pleading. Does the amended complaint cure the defect?

██ To answer that question, it is necessary to remember that the essence of a conspiracy is an agreement, which means that two or more persons—however informal the medium may be—agree to do or refrain from doing one or more things. A conspiracy may embrace an illegal object, or a legal purpose illegally to be effected, but the fundamental requirement is none the less to be averred, in order that issue may be joined for the purpose of trial.

The amended complaint is replete with alleged evidence, but is deficient in failing to contain the essential allegation of agreement or contract, without which no cause can be deemed to have been stated.

The bids for the Housing Administration contract, in the absence of an allegation to the contrary, must be deemed to have been the unrestrained individual act of each of the bidders, not a concerted thing, or done pursuant to an agreement between any of them and the defendant, or among themselves.

For all that is alleged in the challenged pleading, each of the other "competing distributors" may have believed that it was to his (its) individual interest to follow the resale price recommendations promulgated by defendant and therefore acted accordingly; the plaintiff elected otherwise as was its right. Having done so, it does not follow that the severance of its mutually terminable distributorship was the result of a "contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or otherwise * * *" since no such thing is alleged.

The most that can be said for the amended complaint is that it recites a state of purported facts that could have had their origin in a conspiracy, but it does not state that one ever came into existence, naming the period embraced, or the parties thereto.

The mere recital of the names of the competing distributors does not supply the deficiency above discussed. Apparently the plaintiff's grievance is in part against them; since each of them has the right to conduct business according to his or its own concepts of expediency, if and when acting alone, no reason is pleaded or perceived to clothe the plaintiff with the right to interpose any legal bar to the exercise of that right, on the part of each of the plaintiff's competitors.

The plaintiff's apparent reliance upon United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024, is difficult to understand, in view of the elaborate system of contracts between manufacturer, distributors and retail dealers present in that case. In modifying a decree obtained by the government, the court observed (321 U.S. at page 728, 64 S.Ct. at page 816):

"In a business, such as Soft-Lite, which deals in a specialty of a luxury or near-luxury character," (tinted optical lenses) "the right to select its customers may well be the most essential factor in the maintenance of the highest standards of service. We are, as the District Court apparently was, loath to deny to Soft-Lite this privilege of selection. United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992; Federal Trade Commission v. Raymond Bros. Clark Co., 263 U.S. 565, 573, 44 S.Ct. 162, 164, 68 L.Ed. 448. * * * The path is narrow between the permissible selection of customers under the decision in Colgate & Co. and unlawful arrangements as to prices under this decree, but we think Soft-Lite is entitled to traverse it, after a reasonable interim, * * *."

The plaintiff's characterization of the Colgate decision as "dubious," is not in accord with the foregoing views of the Supreme Court.

■ Without extending the discussion, it is clear to this court that the amended complaint does not plead ultimate facts as to the alleged conspiracy or contract in restraint of trade, necessary to present its asserted claim for relief. As to the first cause of action as pleaded, the defendants' motion to dismiss is granted.

The second cause is still difficult to understand.

Apparently the plaintiff's present brief calls attention to but one difference from the original complaint, namely that the differential in recommended prices, based upon the quantity of merchandize involved, has "nothing to do with 'quantity or volume' economies. Rather, it is expressly alleged that such price distinctions are 'wholly arbitrary and artificial * * * having no actual relation to savings to Black & Decker or its said distributors in the cost of the manufacture, sale and delivery of said products from any different methods or quantities in which the said goods are sold' * * * and that the 'affected' customers are themselves 'in general competition with each other'."

Since this alleged cause includes paragraphs 1 through 13 already stated, and avers that in 1954 the defendant promulgated the said plan, and since the plaintiff was one of such distributors for the ensuing period until August 6, 1958, there is a manifest significance in the fact that it did not deem itself to be the victim of what it now complains, until the termination of its distributorship.

If upon the promulgation of the suggested price differentials, the plaintiff had seceded from its distributor status for the reasons now advanced, its conduct would have been consistent with a sense of mission to protect a theoretical public interest, but which by its own conduct it has foreclosed itself from now asserting.

That which is still unclear in the amended pleading is whether recommended price differentials based upon volume of purchase is claimed to be illegal as such; or whether it is the formula employed by defendant in reaching its suggested scale of prices that is condemned by plaintiff. In either case, the nature of plaintiff's claim for relief is obscure.

True, paragraph 31 alleges that plaintiff sustained damages by way of loss of sales, and in 32 that the continued existence of the complained of list of recommended prices threatens it with irreparable harm and damage; these mere assertions however are not of themselves sufficient for the purposes of even average good pleading. See Mason City Tent & Awning Co. v. Clapper, D.C., 144 F.Supp. 754, at page 766.

If any sales were indeed lost to plaintiff between 1954 and 1958, that result was contributed to by its own conduct in maintaining its distributorship.

There is no requirement of law cited in plaintiff's brief, or otherwise revealed, to the effect that in order to assert its present alleged cause, plaintiff was required to operate under the selling plan of which it now complains, for a certain number of years, to the end that its grievances should ripen into a claim for relief, or cause of action, whichever term is preferred.

There is no allegation that defendant has contrived its recommendations so that one purchaser has been charged a higher price for like goods than has been charged one or more of the latter's competitors. That would be necessary to invoke Federal Trade Commission v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196.

■ While this, and other cases cited by plaintiff, were Federal Trade Commission proceedings, undertaken in the public interest, it is not presently suggested that the plaintiff under appropriate circumstances, could not assert in its own behalf, an alleged cause of action, said to arise from illegal conduct

on the part of the defendant. It is the present opinion, however, that plaintiff has not alleged ultimate facts to assert a cause under the statutes which have been invoked, arising during the period of its distributorship, to render the amended complaint as to the second cause, any more adequate as a pleading, than the original one. Cf. Gerli v. Silk Ass'n, D.C., 36 F.2d 959.

In paragraph 16 the nature of the competition between all distributors of B & D products, prior to the termination of plaintiff's distributorship, is described as having been "free, competitive and non-collusive" which must be read as part of this second cause. That being admitted for present purposes, it is apparent that any inherent infirmity in the scale of defendant's recommended prices which allegedly operated to the detriment of the plaintiff, should be the subject of a precise factual allegation, not a mere statement in argumentative form of conclusions drawn from dissertations and judicial opinions having to do with unrelated circumstances.

The requirements of good pleading in such cases is clearly stated in Baim & Blank, Inc. v. Admiral Corp., D.C., 132 F.Supp. 412. This amended pleading does not survive the test.

As to the second cause, the defendants' motion is granted.

As to the third cause, the motion for summary judgment has much to commend it, in view of the narrow scope of the controversy; seemingly but two items are involved as to transactions occurring since August 6, 1958, (a) the sale of repair parts for $2.88; (b) the making of repairs to tools owned by plaintiff's customers, in the sum of $240.71.

These are said to have been subject to a less favorable discount than is accorded to defendant's distributors listed in the amended complaint.

As to the second item, the plaintiff does not meet the argument that no sale of chattels is involved in the making of necessary repairs to mechanical devices,

by citing the Federal Trade Commission cases of Elizabeth Arden, Inc. v. Federal Trade Commission, 2 Cir., 156 F.2d 132, and Sim--'icity Pattern Co. v. Federal Trade Commission, 103 U.S.App.D.C. 373, 258 F.2d 673. Both involved aids to selling, i. e. demonstrators in the first, and cabinets and catalogues in the second. These services and facilities were incident to sales promotion efforts and constituted an element thereof.

Here the repairs had no relation to the original sale of the article itself, but to an independent transaction, the occasion for which was consequent upon but quite remote from what had gone before.

The reasoning contained in General Shale Products Corporation v. Struck Const. Co., 6 Cir., 132 F.2d 425 (certiorari denied 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed. 1148), at page 428, second column, is similar to that which is applicable to this repair job. The transaction in its essence was between the defendant and the owner of the device to which repairs were made, although the plaintiff was the go-between and is dissatisfied with its handling commission.

In view of the termination of the commercial relationship of the parties, the defendants' right to refuse to sell anything to the plaintiff does not constitute a violation of law. Naifeh v. Ronson, etc., 10 Cir., 218 F.2d 202.

With respect to the $2.88 sale, it is too small a matter to engage the attention of the court, even to assuage the plaintiff's appetite for litigation.

At best, the plaintiff's third cause as pleaded is a make-weight which adds nothing to its claim for relief, as set forth in the first asserted cause. The pleadings and the affidavits considered in this connection now make it clear to this court that there is no material issue of fact which ought to be tried. It follows that as to this branch of the amended complaint, the defendants' motion under Rule 56 must be granted.

Settle order in accordance with the foregoing.