GEORGE W. WARNER & CO., Inc.,
Plaintiff-Appellant,

v.

BLACK & DECKER MANUFACTURING
COMPANY, Inc. and Gus F. Fischer,
Defendants-Appellees.

No. 199, Docket 25722.

United States Court of Appeals
Second Circuit.

Argued Feb. 10, 1960.

Decided May 3, 1960.

Daniel Kornblum, New York City, for plaintiff-appellant.

A. Donald MacKinnon, New York City (Milbank, Tweed, Hope & Hadley), New York City, for defendants-appellees.

Edward J. Reilly, Jr., New York City, of counsel.

Before MOORE, Circuit Judge, and SMITH and HERLANDS, District Judges.

MOORE, Circuit Judge.

George W. Warner & Co., Inc. (Warner), plaintiff-appellant, brought suit against The Black & Decker Manufacturing Company, Inc. (B & D) and Gus F. Fischer, defendants-appellees, alleging in its amended complaint [1] three causes of action predicated upon violations of the antitrust laws. Briefly stated the first cause of action charged illegal resale price fixing by Black & Decker on sales by B & D's dealers to government agencies in violation of section 1 of the Sherman Act (15 U.S.C.A. § 1); the second cause of action alleged illegal and discriminatory resale price fixing by B & D on sales by dealers in violation of the Clayton and Robinson-Patman Acts (15 U.S.C.A. § 13); and the third cause of action alleged discrimination in the prices charged by B & D for replacement and repair parts (15 U.S.C.A. § 13(a) (e). The defendant Fischer was the New York and Newark manager of B & D's sales and service branches.

Upon B & D's motion to dismiss the first and second causes of action for failure to state a claim (F.R.Civ.P. Rule 12 (b), 28 U.S.C.A.) and for summary judgment (Rule 56(b) as to the third cause of action, the district court dismissed the amended complaint.[2] Warner appeals.

The allegations of the amended complaint must be accepted as true upon the motion attacking the pleading for legal insufficiency. They disclose, in substance, that B & D is the world's largest manufacturer of portable electric power tools widely used in the building construction trade. Warner is a wholesale distributor of such tools to the trade and to government agencies. As a distributor, Warner and other distributors in the area received a 30% discount off the manufacturer's list price. In June, 1957, B & D in order to fix and control minimum sales prices on bids to government agencies directed Warner and its competing distributors to adhere to prices fixed by B & D. To enforce compliance B & D and Fischer threatened amongst other things loss of the distributorship, elimination or reduction of the price discount, surveillance of bids and the blacklisting and boycotting of non-conformers.

Warner in 1958 submitted the low and successful bid for B & D tools to the New York City Housing Authority which bid was not in conformity with B & D's price fixing plan. Thereupon B & D and Fischer threatened that, unless Warner withdrew its bid or revised it to meet the B & D fixed price, its distributorship and price discount would be terminated. Warner did not change its bid and B & D carried out its threat.

The second cause of action relates to price discounts to so-called large customers and the third cause of action charges discriminatory prices on repairs and services. Treble damages and injunctive relief are sought.

At the time of the argument before the district court, of the opinion of the court of April 16, 1959 and of the argument of the appeal before this court (February 10, 1960), the decision of the Supreme Court in United States v. Parke, Davis and Company, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 had not been announced. Both the district court and counsel for B & D relied heavily upon the decision and the legal theory of United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992. In Colgate, the Supreme Court had said:

"In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own

1. A motion to make the original complaint more definite and for other relief was granted (D.C., 167 F.Supp. 860).

2. Opinion reported in D.C., 172 F.Supp. 221.

independent discretion as to parties with whom he will deal. And, of course, he may announce in advance the circumstances under which he will refuse to sell" (250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992).

For some forty years, the Colgate doctrine had "become part of the economic regime of the country upon which the commercial community and the lawyers who advise it have justifiably relied." (Dissenting opinion, Mr. Justice Harlan in United States v. Parke, Davis and Co., supra [362 U.S. 29, 80 S.Ct. 518].) That they did so advise and did so rely is not open to doubt; whether they did so "justifiably" in the light of warning signals during this period is more debatable.

Even in 1926 an appellate court said that "The state of the law as to price maintenance may rightly be said to be in confusion" (Toledo Pipe-Threading Mach. Co. v. F. T. C., 6 Cir., 1926, 11 F.2d 337, 340). The status quo—at least as to confusion—was rather well maintained throughout the years although the encroachments were so numerous as to cause serious doubt that Colgate reflected then current judicial opinion.

Almost immediately after the Colgate decision the Supreme Court in two price fixing cases (United States v. A. Schrader's Sons, Inc., 252 U.S. 85, 86, 40 S.Ct. 251, 64 L.Ed. 471; Federal Trade Commission v. Beech-Nut Packing Co., 257 U.S. 441, 451, 42 S.Ct. 150, 66 L.Ed. 307) began to qualify the Colgate decision. In the Beech-Nut case the Court found that Beech-Nut had indulged in a series of oppressive practices, amongst which were: suggested retail prices, refusals to sell if there were failure to conform, maintenance of lists of undesirable distributors, and a spy system. These additional embellishments to price suggestion were considered sufficient to sustain an order of the FTC enjoining unfair methods of competition. Mr. Justice McReynolds wrote a dissent based upon the Colgate case. Mr. Justice Holmes also dissented in which Justices McKenna and Brandeis concurred, so that the decision was five to four.

In this circuit in Adams-Mitchell Co. v. Cambridge Distributing Co., 2 Cir., 1951, 189 F.2d 913, 916, Judges A. N. Hand and Clark held that "There are legitimate means of price maintenance in spite of the provisions of the Sherman Act," citing Colgate and distinguishing Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219. Judge Frank in a vigorous dissent was of the opinion that the result reached "breathes new life into the remains of the decrepit doctrine of United States v. Colgate & Co. * * * thereby condoning a form of price-fixing which will simplify evasion of the antitrust laws" (189 F.2d at page 917). After tracing the history of the Supreme Court's opinions on the subject, he said, "Considering the course of Supreme Court anti-trust decisions on the subject of price-fixing since Colgate was decided, it seems to me that, although that doctrine may not be wholly dead, yet, by distinctions stopping just short of extinction, it has been reduced to almost imperceptible proportions." He could not prophesy "just what those shrunken proportions are" but felt that "almost anything more than a bare refusal to sell to price-cutters will constitute illegal price-fixing" (189 F.2d at page 924).

In 1943 in United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 813, 88 L.Ed. 1024, the Supreme Court again explained Colgate and Beech-Nut, saying as to the latter that it recognized that "a simple refusal to sell to others who do not maintain the first seller's fixed resale prices is lawful" but added as to the Sherman Act, "He [the seller] may not, consistently with the act, go beyond the exercise of this right, and by contracts or combinations express or implied, unduly hinder or obstruct the free and natural flow of commerce in the channels of interstate trade." The Court then went on to concede that in Beech-Nut there were no specific agreements but that freedom of competition was suppressed by "coercion of its customers through special agents of the company, by reports of competitors

790

about customers who violated resale prices, and by boycotts of price cutters" 321 U.S. at page 722, 64 S.Ct. at page 813.

In 1949 further qualification of Colgate was foreshadowed in 58 Yale Law Journal 1121, in which a critical analysis of the Colgate and related cases is presented. The critique ends with the statement: "When a leading case is beset by qualifications and then atrophied by lack of use, its final demise is difficult to detect. Perhaps the Colgate case is dead, despite frequent citation. But doubt remains. The Colgate case, still a symbol of special immunity for all refusals to sell, should be expressly overruled at the earliest opportunity" (p. 1129).

■■ Turning now to the amended complaint itself, the allegations of paragraphs 18(a)–(e), 20, 21, 22 and 23 allege a sufficient framework upon which plaintiff can attempt to build its cause of action. Paragraph 19, as appellee argues, is merely a statement of an assumption and a conclusion but it may be disregarded for purposes of sustaining the pleading as a whole. The allegations are sufficient to bring the amended complaint within the doctrine of the Beech-Nut and the recent Parke, Davis decisions. Of course, it will be necessary for plaintiff to sustain the allegations by the necessary proof because it would appear from the concurring opinion of Mr. Justice Stewart in the Parke, Davis case that the Colgate principles have not been completely destroyed. The Supreme Court has left a narrow channel through which a manufacturer may pass even though the facts would have to be of such Doric simplicity as to be somewhat rare in this day of complex business enterprise. The right to impose its will upon distributors and retailers "is tolerated but only when it is the consequence of a mere refusal to sell in the exercise of the manufacturer's right 'freely to exercise his own independent discretion as to the parties with whom he will deal.'" United States v. Parke, Davis and Co., supra. The court indicated that when the manufacturer's actions "go beyond mere an-nouncement of his policy and the simple refusal to deal, and he employs other means which effect adherence to his resale prices" then he has put together a combination in violation of the Sherman Act. Here again, however, the legal sufficiency of the plaintiff's case can only be determined after it has had an opportunity to present its proof. The only question presently before the court is whether the amended complaint is sufficient for this purpose. A fair reading of the pleadings as a whole leads to the conclusion of such sufficiency as to the first and second causes of action.

■ The motion for summary judgment addressed to the third cause of action assumes that there are no genuine issues as to material facts. Warner alleges discrimination as between Warner and its competing distributors in the furnishing of repair and services facilities. The items may not involve large amounts but B & D's practices, if proved, might have a substantial effect on competition and hence warrant a trial on the merits.

Reversed.