**JOHNNY MADDOX MOTOR COMPANY, Plaintiff,**

**v.**

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 1122.**

United States District Court
W. D. Texas,
Austin Division.

Dec. 30, 1960.

E. L. Bauknight and J. C. Hinsley, Austin, Tex., for plaintiff.

James H. Keahey and Charles D. Mathews of Clark, Mathews, Thomas, Harris & Denius, Austin, Tex., for defendant.

FISHER, District Judge.

This matter is before the court on defendant's motion for summary judgment based upon the following grounds: (1) the complaint does not state a claim upon which treble damages can be recovered under the provisions of the anti-trust laws, 15 U.S.C.A. § 1 et seq., and (2) the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact either as to the primary claim of the plaintiff for treble damages under the anti-trust laws or as to plaintiff's secondary and separate claim of violation of contract, and the defendant is entitled to summary judgment as a matter of law.

Plaintiff, Johnny Maddox Company, is defendant's authorized dealer for sales and service of Lincoln, Mercury, and Continental automobiles in New Braunfels, Texas. His amended complaint in substance alleges that the defendant, Ford Motor Company, through its officers, agents, employees or representatives, and through corporations, franchises, or divisions thereof over which defendant exercised control engaged in a conspiracy to sell a large number of Lincoln automobiles in Texas in the latter part of 1957 and the first months of 1958. It is alleged that such sales discriminated against plaintiff as a competitor of other franchise dealers of Lincoln automobiles in Texas in that such sales were made at prices below the wholesale dealer price.

In explanation of that charge, the plaintiff further asserted that a number of new 1957 Lincolns were shipped by defendant, ostensibly for export into Mexico at Laredo, Texas, but were actually sold there by an intermediary to Texas residents. Plaintiff charges that such intermediary replaced the authorized dealer in the normal transaction and sold the Lincolns to retail purchasers at prices under the wholesale price which the plaintiff was obligated to pay.

It is further alleged that defendant sold Lincolns either directly to retail purchasers or through certain selected authorized dealers at prices far below the wholesale dealer price at which the same or similar vehicles were offered to the plaintiff, and that the plaintiff was offered no discount, rebate or allowance from the regular wholesale dealer price. Plaintiff also asserts that low-milage, company-used Lincolns were sold to selected dealers at prices below those available to plaintiff. Finally, plaintiff says that defendant repurchased from certain dealers a portion of their stock of new Lincolns but did not make such repurchases from plaintiff.

All of the above described activities are asserted to have been done in connection with a conspiracy and are alleged to have been in restraint of trade and to have constituted a monopoly. Upon those allegations the plaintiff sought to recover triple damages.

As a separate matter, the amended complaint also sets forth a claim for violation of contract with respect to a Continental Mark II automobile. This action is based upon a sales contract by which defendant agreed: (a) in the event defendant ceased to produce a certain model vehicle or substituted a new model involving substantial appearance or mechanical changes, it would pay a five per cent (5%) rebate to dealers on such discontinued models as they had in stock; or (b) in the event defendant introduced an equivalent type vehicle at a lower price, it would refund to dealers the difference in the price of such equivalent vehicle. The plaintiff alleges that he re-ceived from defendant the five per cent (5%) rebate, instead of the price difference, to which he claims to be entitled.

The allegations as to conspiracy and monopoly are general.

■■ It is basic in the law of conspiracy that there must be at least two persons or entities to constitute a conspiracy. A corporation cannot conspire with itself, any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. Nelson Radio & Supply Company v. Motorola, 5 Cir., 200 F.2d 911, cert. den., 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356; Sperry Rand Corporation v. Nassau Research & Development Associates, D.D.N.Y., 152 F.Supp. 91; Alexander v. Texas Company, W.D.La., 149 F.Supp. 37; Warner & Company v. Black & Decker Manufacturing Company, E.D.N.Y., 172 F.Supp. 221. A statement made by the Fifth Circuit in the Nelson case is applicable here:

> "The conspiracy upon which plaintiff relies consists simply in the absurd assertions that the defendant, through its officers and agents, conspired with itself to restrain its trade in its own products."

■ The allegations of monopoly are similarly mere conclusions of the pleader, without basis in supporting alleged facts. In dismissing a similar complaint, the court in Nelligan v. Ford Motor Company, W.D.S.C., 161 F.Supp. 728, affirmed, 4 Cir., 262 F.2d 566, noted that Ford was charged with monopolizing the market for Lincoln-Mercury cars, parts and accessories, but ruled that such a monopoly does not run afoul of the Sherman Anti-Trust Act because every manufacturer has a monopoly on his own brand-name products. No allegation in the amended petition purports to charge a monopoly in anything other than the sale of Lincoln automobiles. In Arthur v. Kraft-Phoenix Cheese Corporation, D.Md., 26 F.Supp. 824, the court said:

> "Every manufacturer has naturally a complete monopoly of his particular product especially when sold

under his own private brands, and no private controversy with a distributor could legally tend to increase that type of a natural monopoly. The Sherman Act is, therefore, clearly not really involved. * * * There is still nothing in the particular facts alleged to show a lessening of competition within the meaning of the Clayton Act."

Accordingly, we find that the plaintiff has failed to state a cause of action either for conspiracy or monopoly.

■■ Plaintiff's more specific allegations seemingly seek to show price discrimination in violation of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a). That statute prohibits price discrimination only where it has produced one or more of three anti-competitive consequences: (1) to lessen competition substantially, or (2) to tend to create a monopoly, or (3) to injure, destroy, or prevent competition among sellers, buyers, or their customers. Alexander v. Texas Company, supra; Balian Ice Cream Company v. Arden Farms Company, 9 Cir., 231 F.2d 356, cert. den. 350 U.S. 991, 76 S.Ct. 545, 100 L.Ed. 856; and authorities cited therein. Plaintiff was merely one of many Lincoln dealers in the State of Texas during the period here involved; and a large number of other dealers handled competitive automobiles in the same area. Such small-scale discrimination, if such existed, could not (1) have substantially lessened competition in inter-state commerce, or (2) have tended to create a monopoly of such commerce in the area within the meaning of the statute. Neither could such alleged discrimination have (3) injured, destroyed or prevented competition among sellers, buyers, or their customers. The mere possibility that there was competition between plaintiff's business and that of others is not enough. Such competition must be clearly shown. Alexander v. Texas Company, supra; Enterprise Industries, Inc. v. Texas Company, 2 Cir., 240 F.2d 457, cert. den. 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914.

Equally fatal to plaintiff's charges of price discrimination is that the amended complaint shows no injury to the public. "The very foundation of the right of a private suitor to recover 'threefold damages by him sustained, and the cost of suit, including a reasonable attorney's fee' is the violation of public rights prohibited by the Act and, indeed, made criminal offenses." Kinnear-Weed v. Humble Oil & Refining Company, 5 Cir., 214 F.2d 891.

The complaint in Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519, as summarized by the court, appears to have been substantially identical with that in the instant case. After reviewing the allegations, the court set out as the general rule:

"* * * in a case of this kind brought by an individual suitor for the recovery of three-fold damages, it is essential that the complaint allege a violation of the Act in the form of undue restriction or obstruction of interstate commerce and damages to plaintiff proximately resulting from the acts and conduct which constitute the violation. But injury to the plaintiff alone is not enough upon which to predicate such an action. There must be harm to the general public in the form of undue restriction of interstate commerce."

In that case the trial court dismissed the complaint for failure to state a cause of action; in affirming, the Tenth Circuit further explained:

"The pleading did not allege facts constituting the constituent elements of the familiar pattern of combination or conspiracy among competitors in the field of industry or commerce to fix prices, divide marketing territories, apportion customers, restrict production, or otherwise suppress competition. It alleged that the defendant formed a combination or conspiracy in restraint of interstate commerce. It further alleged that they combined and conspired to force plaintiff out of business as a dealer

in Hudson automobiles. It further alleged that defendants had discriminated against plaintiff in certain respects. And it further alleged that the effect of the unlawful acts and practices on the part of defendants was to burden, obstruct, and unduly restrain interstate commerce and trade in new Hudson automobiles. But these were general allegations in the nature of conclusions, without any averment of specific acts from which it could be determined as a matter of law that defendants violated the act with harmful results to the public. * * *

"It was essential that the pleading allege facts from which it would be determined as a matter of law that the conspiracy contemplated or tended to restrain interstate commerce, with harmful effect to the public interest. Failing to contain allegations of that requisite nature, the pleading was insufficient in law to state a cause of action for which relief could be granted under the Act."

The authorities noted and discussed above abundantly support the first ground upon which defendant's motion for summary judgment was based. The amended complaint fails to show any right of recovery under the anti-trust laws. As to the major cause of action alleged, we, therefore, sustain defendant's motion for summary judgment. This ruling, however, does not need to rest solely upon the deficiencies of the amended complaint. Defendant's second ground for summary judgment is equally valid. Plaintiff took the depositions of nine witnesses; such depositions, on file herein, give no support to the allegations of the complaint. No evidence was adduced of any violation of the anti-trust laws.

None of the witnesses testified as to any discrimination in the price at which new 1957 Lincolns were sold to dealers. On the other hand, both dealers and company officials testified unequivocally that the cars were sold only at the established dealer price.

There is no evidence of discriminatory sales by defendant or any agent acting for defendant at Laredo, Texas. Rather, the proof shows the alleged sales to have been made by the Ford Motor Company of Mexico at Mexico City, and there is no showing of discrimination.

The sale of company used cars on a bid basis was open to all dealers, including plaintiff. Moreover, Plaintiff's President and majority stockholder testified that he knew such cars were being sold by defendant, but that he did not want to bid on or buy any.

Defendant was shown to have repurchased automobiles from dealers in three instances only: once where there was a change in the authorized Lincoln dealership and on two other occasions where the cars were put into company use. None of such repurchases represent violations of the anti-trust laws.

We therefore hold that neither the amended complaint nor the evidence shows any ground of recovery under the anti-trust laws, and accordingly sustain defendant's motion for summary judgment as to plaintiff's first cause of action.

As mentioned above, plaintiff's second claim involves the construction of his sales contract with defendant. Plaintiff says that when defendant produced its Continental Mark III automobile, he became entitled to a rebate for the price difference between such car and the Continental Mark II which he then had in stock. The contract provides for two alternative types of rebates or refunds: (1) a five per cent (5%) rebate in the event defendant "ceases to produce models of vehicles and substitutes new models of vehicles in place thereof involving substantial appearance or mechanical changes," or (2) the difference in price in the event defendant introduces an equivalent type of vehicle of the next preceding model at a lower dealer price. It further provides that defendant shall have the sole right to determine whether or not types of vehicles shall be deemed to be equivalent for the purpose of re-

108

bate, and specifies that in making such determination, defendant shall take into consideration the relative capacities, performances, sizes, weights, designs, and/or specifications for such vehicles.

Affidavits of company officials attached to defendant's motion for summary judgment are not controverted and conclusively establish that the Continental Mark III is not an equivalent vehicle to the Continental Mark II within the terms of the sales agreement and that plaintiff was only entitled to a five per cent (5%) rebate, which he admittedly has already received. We therefore sustain defendant's motion for summary judgment as to plaintiff's second cause of action.

Judgment has been entered for the defendant, with costs.