**LENOX, INCORPORATED, Petitioner,**

v.

**FEDERAL TRADE COMMISSION,
Respondent.**

No. 241, Docket 32476.

United States Court of Appeals
Second Circuit.

Argued April 24, 1969.

Decided Oct. 10, 1969.

Andrew C. Hartzell, Jr., New York City (Debevoise, Plimpton, Lyons & Gates, Meredith M. Brown, New York City, on the brief), for petitioner.

Gerald J. Thain and Jerold D. Cummins, Washington, D. C. (James McI. Henderson, Gen. Counsel for the F.T.C., J. B. Truly, Asst. Gen. Counsel, on the brief), for respondent.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and WYATT, District Judge.*

WYATT, District Judge:

Before us is a petition of Lenox, Incorporated (Lenox) praying that an order of the Federal Trade Commission (the Commission) be set aside or modified. The order of the Commission was made under the Federal Trade Commission Act (15 U.S.C. § 41 and following; sometimes "the Act"), specifically Section 5(a) (1) of the Act (15 U.S.C. § 45(a) (1)) forbidding unfair methods of competition. Review by this Court of such an order is provided for in Section 5(c) of the Act (15 U.S.C. § 45 (c)).

Lenox makes fine china dinnerware (plates, cups and saucers, etc.) and fine

* Of the Southern District of New York, sitting by designation.

china giftware (vases, ashtrays, etc.). It sells these throughout the United States directly to a large number of retailers, such as department stores, jewelry stores, and gift shops. The products of Lenox are sold under the trademarks "Lenox" and "Oxford" and over many years have become well known under these names for their high quality.

The Commission in October 1966 issued a complaint against Lenox charging a violation of Section 5(a) (1) of the Act in that Lenox had engaged in an unfair method of competition by a system of resale price maintenance. It had years ago been held that such a system was an unfair method of competition within the meaning of Section 5 of the Act. Federal Trade Commission v. Beech-Nut Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1922) (McKenna, Holmes, McReynolds, and Brandeis, JJ., dissenting).

Beginning some years ago, however, a number of state legislatures passed laws which, for trademarked products such as those of Lenox, made it lawful for a sales contract to fix resale prices. These statutes are usually called "fair trade laws." Many such statutes also provided that if any seller in the state had made a contract with a retailer fixing resale prices, the seller could enforce observance of such retail prices against all retailers in the state, whether they were parties to such a contract or not; those not parties to such a contract were called "nonsigners."

In 1937, Congress adopted the Miller-Tydings Act as an amendment to Section 1 of the Sherman Act (15 U.S.C. § 1). Thereby Congress made lawful in interstate commerce under the antitrust laws and under Section 5 of the Federal Trade Commission Act those fair trade contracts which by state law were lawful for intrastate transactions.

In Schwegmann Bros. v. Calvert Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) the Supreme Court held that the Miller-Tydings Act did not make retail price fixing lawful as against nonsigners.

Congress then passed in 1952 the McGuire Act (66 Stat. 632) as an amendment to Section 5 of the Federal Trade Commission Act. The purpose of the McGuire Act was to reverse the *Schwegmann* decision and "to provide that if the State statutory scheme permitted price maintenance against nonsigners, such contracts would be immunized from antitrust violations." Janel Sales Corp. v. Lanvin Parfums, Inc., 396 F.2d 398, 402 (2d Cir), cert. denied 393 U.S. 938, 89 S.Ct. 303, 21 L.Ed.2d 275 (1968).

Lenox, before issuance of the Commission's complaint, had not made any fair trade contracts. After issuance of the Commission's complaint, however, Lenox changed its policy and began to make express written fair trade contracts in those states where such contracts were lawful.

After answer and the taking of evidence, the Hearing Examiner in May 1967 filed his initial decision and proposed order. He found that Lenox had adopted and employed a system of establishing resale prices for its products and he proposed a cease and desist order; he proposed, however, that the order expressly provide that it did not affect any resale price maintenance contracts which Lenox might make in accordance with Section 5 of the Federal Trade Commission Act as amended by the McGuire Act. The effect of this last proviso was to permit Lenox to fix resale prices in "fair trade" states where this was lawful.

The Commission in its final order departed in several respects from the order proposed by the Hearing Examiner.

The principal change made by the Commission was to eliminate the proviso permitting Lenox to make fair trade contracts where lawful. Instead, the Commission (order, paragraph 9) forbade Lenox to make any such contracts for three years.

The Commission also (order, paragraph 6) prohibited the use by Lenox

of suggested resale price lists for three years, instead of the two years proposed by the Hearing Examiner. The Commission (order, paragraph 5) prohibited, without time limit, sales by Lenox to dealers at a discount from a retail price; the Hearing Examiner proposed that this prohibition be for two years. There should logically be the same time limit for both prohibitions (paragraphs 5 and 6) and the form of the Commission's order must be the result of inadvertence.

■ The basic attack by Lenox on the order must fail. We are satisfied that there is substantial evidence to support the finding of the Commission that Lenox "entered into illegal price maintenance agreements with its dealers." The activities of Lenox were similar to those found illegal in United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). They were too extensive to pass through the "narrow channel" left after the Parke, Davis decision. George W. Warner & Co. v. Black & Decker Mfg. Co., 277 F.2d 787, 790 (2d Cir. 1960).

■ There is no justification, however, for that part of the order (paragraph 9) which forbids Lenox to make resale price maintenance agreements in states where such agreements are lawful. Not only is such conduct lawful; it is sanctioned by a public policy twice declared by Congress, first in the Miller-Tydings Act and again in the McGuire Act. Against this background, no remedial purpose can be seen for the prohibition; it can only be regarded as punitive. In this connection we have reexamined United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944), on which the Commission chiefly relies. The distribution system there before the Supreme Court and the place of fair trade agreements in that system were greatly different (including an involvement of both wholesalers and retailers) from the situation with respect to Lenox; this difference deprives the decision of any strength as a precedent here. It may

also be noted that the Supreme Court declined to approve any restriction on fair trade contracts for a longer period than six months.

Thus, paragraph 9 of the Commission's order must be eliminated and the following substituted therefor:

"9. Nothing hereinabove contained shall be construed to limit or otherwise affect any resale price maintenance contracts that respondent may enter into in conformity with Section 5 of the Federal Trade Commission Act, as amended by the McGuire Act (66 Stat. 632 [1952], 15 USC 45 [a] );"

The effect of this provision is to limit the force of paragraph 6 of the order to states where Lenox has no lawful fair trade agreements.

■ Paragraph 5 of the Commission's order should be modified, for the reason already indicated, so that the paragraph will read as follows:

"5. Selling to dealers at a mark down or discount from a resale or retail price for a period of three years following the effective date of this order. Provided, however, that respondent may, two years following the effective date of this order, upon a showing that competition in the resale of its products has been restored, petition the Commission to repeal this provision;"

The force of this paragraph 5 is also limited to states where Lenox has no lawful fair trade agreements.

We have reviewed the objections of Lenox to procedural matters—(a) the admission of documentary evidence and (b) the receipt of testimony from a witness, a former Lenox dealer, whose reinstatement was required by the proposed order and who was given a copy of that order (with the complaint) before testifying. We do not find sufficient merit in these objections to affect the order of the Commission. It does not seem to us a good practice, however, to show a prospective Commission witness

a copy of a proposed order under which the witness would secure a benefit.

The petition is denied in part and granted in part. The Commission's order is affirmed as modified and as modified may be enforced. The judgment will be settled in accordance with Rule 19 of the Federal Rules of Appellate Procedure.