**HOUSE OF MATERIALS, INC.,**
**Plaintiff-Appellee,**

**v.**

**SIMPLICITY PATTERN CO., Inc.,**
**Defendant-Appellant.**

**No. 92, Docket 26968.**

United States Court of Appeals
Second Circuit.

Argued Nov. 29, 1961.

Decided Jan. 23, 1962.

Amos J. Peaslee, Jr., New York City (Fischer & Shilkoff, Roosevelt, N. Y., Peaslee, Brigham, Albrecht & McMahon, New York City, of counsel), for plaintiff-appellee.

William Simon, Washington, D. C. (Howrey, Simon, Baker & Murchison, and John Bodner, Jr., Washington, D. C., House, Grossman, Vorhaus & Hemley, and Sidney Greenman, and Ira J. Goldstein, New York City, on the brief), for defendant-appellant.

Before CLARK, FRIENDLY and KAUFMAN, Circuit Judges.

KAUFMAN, Circuit Judge.

Simplicity Pattern Co., Inc. (Simplicity) appeals from a preliminary injunction ordered by Judge Bryan [1] which, in effect, requires it to continue business dealings with appellee House of Materials, Inc. (Materials), one of its former customers, pending final disposition of a private antitrust action in which both parties are involved.

The present dispute is the outgrowth of a decision by the Supreme Court in FTC v. Simplicity Pattern Co., Inc., 360 U.S. 55, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959) which upheld a cease and desist order of the Federal Trade Commission charging Simplicity with certain violations of Section 2(e) of the Clayton Act, as amended, 15 U.S.C.A. § 13(e). Specifically, Simplicity [2] was found to have provided, without charge, display cabinets and pattern catalogs to its large variety-store customers, although it did not provide these facilities to its small fabric-store customers. This was held to be an unlawful discrimination.[3]

Soon after that decision was rendered, three of Simplicity's small fabric-store customers brought a treble damage action against it pursuant to Section 4 of the Clayton Act, 15 U.S.C.A. § 15. Their complaint alleged the Section 2(e) violations which the Supreme Court had sustained, and also several others.[4] Insofar as the allegations were identical with those litigated in the Federal Trade Commission proceedings, plaintiffs relied on the Supreme Court decision as prima

---

1. P. W. Husserl, Inc. v. Simplicity Pattern Co., Inc., 191 F.Supp. 55 (S.D.N.Y.1961).

2. Simplicity is one of the nation's largest manufacturers of tissue patterns used in the home for making women's and children's wearing apparel.

3. The Federal Trade Commission had considered similar factual allegations for possible violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. In addition to the conduct described above, it was charged that Simplicity allowed only its large variety-store customers to obtain stock on a consignment basis rather than by making a large cash investment; that it paid shipping charges for merchandise sent to the large variety stores but not for goods sent to the small fabric stores; and that it offered to large variety stores shorter contracts than it made available to its other customers. This "unfair competition" charge was dismissed for want of evidence establishing competitive injury.

4. The additional allegations involved essentially the same acts considered by the Federal Trade Commission for Section 5 violations, as set forth in footnote 3, supra.

facie evidence of the violations under 15 U.S.C.A. § 16. Materials was one of forty small fabric-store customers of Simplicity that were subsequently allowed to intervene in the action.

Sometime after the lawsuit was instituted, Simplicity notified two of the original plaintiffs that it intended to terminate business relations with them at the approaching expiration of their contracts. This action was taken pursuant to a provision in those contracts which specified that unless either party gave such notice the contracts would automatically be renewed for an additional five years.[5] Later, when the additional customers intervened in the action, Simplicity sent notices to a number of them including Materials, which were similar to those sent to the original plaintiffs.

In March, 1960, the three original plaintiffs applied to Judge Dimock (S.D. N.Y.) for a preliminary injunction against Simplicity to prevent the manufacturer from ending their contracts. The motion was denied without opinion. In July, 1960, these same plaintiffs, joined by three intervening plaintiffs, including Materials, renewed their application to the District Court for a preliminary injunction against Simplicity. This time their efforts met with success, and the injunction issued. Five of the plaintiffs, however, failed to post the bond required by the lower court's decree and the injunction was vacated as to them. As a result, Materials is the only appellee before us.

The District Court found, on the basis of affidavits alone, that the sole motivation for Simplicity's refusal to deal with the plaintiffs below was its desire to retaliate for the treble damage action brought against it by those plaintiffs. The court found also that a prime purpose of Simplicity's action was to exert economic pressure on the plaintiffs in order to discourage them from continuing with their litigation. After an extensive review of the relevant authorities, the court concluded that this refusal to deal was itself a violation of the antitrust laws.[6] Sua sponte it directed that the complaint be amended to include a count alleging the refusal to deal, and enjoined Simplicity from refusing to sell its patterns to the plaintiffs on the terms contained in the contracts, which, as we have said, the manufacturer had attempted to terminate.

On appeal Simplicity argues that the refusal to deal did not violate the antitrust laws and that, as a result, the lower court had no power under Section 16 of the Clayton Act[7] to issue an injunction. It contends also that even if we are to assume that the court had power to enjoin it from refusing to deal with Materials, the court's exercise of that power under these circumstances amounted to an abuse of discretion.

Although we are in sympathy with Judge Bryan's commendable attempt to prevent conduct which he believed was undertaken for the purpose of impeding enforcement of the antitrust laws

---

5. The contract (App. 85a–86a) provided: "CANCELLATION OF ORDER This order is to remain in force for a term of five years from date of acceptance at New York and from term to term thereafter, *unless terminated by either party by written notice served sixty days prior to the expiration of the initial or any succeeding term.*" (Emphasis added.)

6. It is not clear from the lower court's opinion upon which provision of the antitrust laws it relied in holding that the refusal to deal was unlawful. "[T]he validity of any refusal to deal may depend on the Sherman Act's prohibitions on contracts, monopolization and combinations in restraint of trade; the Clayton Act's

control on price discriminations and exclusive arrangements; as well as the general ban on 'unfair methods of competition' in Section 5 of the Federal Trade Commission Act." Report of the Attorney General's National Comm, to Study the Antitrust Laws, 133 (1955).

7. 15 U.S.C.A. § 26 reads in part: "Any person * * * shall be entitled to sue for and have injunctive relief, in any court of the United States * * * against threatened loss or damage by a violation of the antitrust laws * * * when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity * * *."

through a private action, we are constrained to agree with appellant that the injunction cannot be sustained.[7a]

## I.

■ Section 1 of the Sherman Act provides that, "Every contract, combination * * * or conspiracy, in restraint of trade * * * is declared to be illegal." 15 U.S.C.A. § 1. It is to be noted that this provision requires some type of joint action, as well as an (undue) restraint of trade.

## A.

Contract, Combination or Conspiracy.

In the often cited case of United States v. Colgate & Co., 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919), the Supreme Court held that the Sherman Act "does not restrict the long recognized right of [a] * * * manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." [8] Colgate, it was believed, stood for the proposition that, in the absence of an unlawful agreement between a manufacturer and its customer, a refusal to deal with a mere unilateral act which could not violate Section 1 irrespective of the manufacturer's motives. Although much water has gone over the dam since that decision, see Warner & Co. v. Black & Decker Mfg. Co., 277 F.2d 787, 789 (2nd Cir., 1960), and this interpretation of the Act has been substantially limited, see United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), the Colgate case has not been expressly overruled.[9] Instead, it appears that:

"The Supreme Court has left a narrow channel through which a manufacturer may pass even though the facts would have to be of such Doric simplicity as to be somewhat rare in this day of complex business

enterprise." Warner & Co. v. Black & Decker Mfg. Co., supra, at p. 790 of 277 F.2d.

■ We believe that in the instant case the facts are of such "Doric simplicity." Assuming as we do that the proof warranted the inference that Simplicity's action was motivated by Materials' prosecution of the treble damage action, appellant has done nothing except exercise its right to terminate the contract in accordance with its terms. There is no indication that Simplicity went "beyond mere announcement of his policy and the simple refusal to deal," or that it has employed "other means" to effect that policy by means of a combination within the rule of United States v. Parke, Davis & Co., supra, at p. 44 of 362 U.S., at p. 512 of 80 S.Ct. There is no claim that Simplicity has exacted a contract, express or implied, United States v. A. Schrader's Sons, Inc., 252 U.S. 85, 40 S.Ct. 251, 64 L.Ed. 471 (1920), or that it engaged in conduct tantamount to an agreement, F.T.C. v. Beech-Nut Packing Co., 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307 (1922), or in a conspiracy, United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944); nor is there present here any concerted refusal to deal. While it is true that the practical effect of Simplicity's conduct was to exert pressure on appellee to acquiesce to Simplicity's desire that it discontinue the lawsuit, we observe that this kind of "coercion" was present (although for another purpose) in Colgate as well, and Colgate specifically stated that the manufacturer "may announce in advance the circumstances under which he will refuse to sell." 250 U.S. 307, 39 S.Ct. 468.

## B.

Restraint of Trade

Even if we were to assume that the Colgate rule does not extend to the pres-

---

**7a.** The decision of the district court is discussed at 62 Colum.L.Rev. 181 (1962).

**8.** An earlier expression of that rule was announced by this Court in Great Atlantic

& Pacific Tea Co. v. Cream of Wheat Co., 2 Cir., 227 F. 46 (1915).

**9.** But see dissent by Justice Harlan, 362 U.S. 49, 80 S.Ct. 514.

ent facts, or that Colgate no longer represents the controlling law, and that Simplicity's conduct amounted to a "contract, combination, \* \* \* or conspiracy," we cannot say that a refusal to deal under the circumstances present here amounts to an undue restraint of trade. The greater number of the Section 1 "refusal to deal" cases involve retail price maintenance schemes or other methods of eliminating competition. See Barber, Refusals to Deal Under the Federal Antitrust Laws, 103 U.Pa.L.Rev. 847, 857–62 (1955). Appellee does not cite, and we have not found any case in which a "refusal to deal" based on a customer's prosecution of a suit against a manufacturer has been held to constitute an unreasonable restraint of trade. See 62 Colum.L.Rev. 181, 184 (1962). This, when considered, is not astonishing, for the relationship between a manufacturer and his customer should be reasonably harmonious; and the bringing of a lawsuit by the customer may provide a sound business reason for the manufacturer to terminate their relations. Bergen Drug Co. v. Parke, Davis & Co., (D.N.J. October 18, 1961). Congress has not indicated an intention to interfere with ordinary commercial practices. United States v. Bausch & Lomb Optical Co., supra. Indeed, when Congress enacted the Clayton Act, it rejected a provision which would have prohibited arbitrary refusals to sell because it was being projected into a field of legislation "untried, complicated and dangerous."[10] On the other hand, we should suppose that Congress could decide that the manufacturer's refusal to deal should not be allowed so long as there is any possibility that the purpose of such action is to avoid liability in a treble damage proceeding for past acts alleged to have violated the antitrust laws. But, absent any indication that it has done so, we cannot justify through improper judicial "interpretation" of a section of the antitrust laws[11] what amounts to an extension of the remedies given by Congress under the Sherman and Clayton Acts. See Bergen Drug Co. v. Parke, Davis & Co., supra.

## II.

■■ There is no suggestion here that Simplicity's action constituted a violation of the anti-monopoly provision of the Sherman Act, 15 U.S.C.A. § 2. It is not alleged that Simplicity monopolized the market or by its refusal to deal attempted to achieve a monopoly. In fact, Simplicity's action in terminating the contracts of a number of its customers necessarily created an added market for its competitors. Moreover, we think it too plain to merit discussion that Simplicity's "refusal to deal" cannot be regarded as a violation of the Clayton Act. See Barber, supra, at pp. 848–51 (1955).

## III.

■■ The question remains as to whether the trial court could have enjoined Simplicity's conduct in the proper exercise of its general equity powers. We believe that in an appropriate case a court might restrain a defendant from attempting to coerce a plaintiff into discontinuing a lawsuit. This type of restraint would be akin to an exercise of the court's contempt power for the purpose of protecting the integrity of the judicial system. But, even if we assume for purposes of this case that such a power exists, we do not believe that its use would have been warranted. Here, Simplicity and its customer voluntarily entered into a contractual relationship and agreed to transact business for a limited period of time. In the course of that business, Simplicity may have discriminated against Materials in violation of the Clayton Act; and, as a result, the con-

10. Sen.Rep. No. 698, 63rd Cong., 2d Sess. 44 (1914).

11. The District Court appears to have found by implication in Section 4 of the Clayton Act a prohibition against coercing persons who bring treble damage actions to discontinue them. But we think that such an implication is unwarranted, for we find nothing in the language or purpose of the statute which suggests that Congress intended to force manufacturers to deal with persons who sue them, while not forcing them to deal with others.

tract relationship may have been rendered less valuable to this customer.[12] Materials maintained that it did suffer an injury and it brought a treble damage action to compensate for it and to recover the statutory penalty. Meanwhile the initial term of the contract between Simplicity and Materials was about to expire. It is true that the contract was subject to automatic renewal, if no one desired to cancel. But, Simplicity, for reasons it thought sufficient, decided to terminate and gave the required contractual notice of such termination.

Assuming the validity of appellant's argument that Simplicity's conduct was motivated solely by a desire to avoid future business dealings with a litigious customer, we must ask ourselves, "What contractual or other legal right of its customer was violated?" Simplicity's refusal to deal after the original contract term expired did not have the legal effect of depriving Materials of a remedy for past injury. And, as we have already said, the appellee was not thereby subjected to a new and distinct antitrust violation.[12a]

The issuance of the injunction, however, would have the effect of extending appellee's contractual right to do business with Simplicity for the duration of the litigation.[13] When it is recalled that the treble damage action did not involve any refusal to deal, and that Materials was seeking only a monetary recovery for the alleged Section 2(e) violations, it is apparent to us that the effect of such temporary injunctive relief is singularly inappropriate.

## IV.

Finally, we believe that the injunction cannot be sustained on the theory that Simplicity's refusal to deal constituted a tort. It has been recognized that an intentional infliction of injury is a "prima facie" tort which requires justification or excuse if it is not to create a liability. Advance Music Corp. v. American Tobacco Co., 296 N.Y. 79, 70 N.E.2d 401 (1946); see also Mogul S.S. Co. v. McGregor, Gow & Co., 1889, 23 Q.B:D. 598, aff'd [1892] A.C. 25. What amounts to legal justification or excuse depends upon "principles of policy." Green v. Victor Talking Machine Co., 24 F.2d 378, 59 A.L.R. 1091 (C.C.A. 2, 1928), cert. denied 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928). In this connection, it generally has been held that "fundamental assumptions in free business enterprise," including the belief that "each business enterprise must be free to select its business relations in its own interest," may justify or excuse the act of one who causes harm to another as a collateral consequence of his refusal to continue a business relation terminable at will.[14] 4 Restatement, Torts, § 762, and comments a, b and c; Green v. Victor

12. In this connection, it is worth noting that the Section 2(e) violation sustained in F. T. C. v. Simplicity Pattern Co., Inc., supra, did not, under the rule announced in that decision, require evidence of competitive injury; and that the Commission had dismissed charges of Section 5 "unfair competition" based on acts essentially the same as those alleged in the complaint in the present action for want of evidence of such injury. See footnote 3, supra.

12a. In this developing area of the law we cannot say that there will never be circumstances in which the court will exercise its equity power to prevent duress committed under color of legal right. See Dawson, Economic Duress—An Essay in Perspective, 45 Mich.L.Rev. 253–290 (1947). But we do hold that in this case Simplicity's exercise of its right to terminate the contract did not justify the intervention of the court. Cf. 62 Colum. L.Rev. 181, 186 (1962).

13. The District Court was only concerned with the question of temporary relief in deciding the motion for an injunction. Since the decree is not founded on an antitrust violation which could be enjoined into the future, or upon a tort, see IV. infra, it is to be presumed that it would not be made permanent even if the treble damage action claims are established.

14. This is to be distinguished from a concerted refusal to deal, i. e., a boycott, which is tortious, Restatement, Torts, sec. 765, and can be enjoined. Cf. Carroll v. American Federation of Musicians, 295 F. 2d 484 (2nd Cir. 1961).

Talking Machine Co., supra, at p. 382 of 24 F.2d; Prosser, Torts, § 107 (2d ed. 1955); 1 Harper & James, Torts, § 6.13, p. 521 (1956); and see cases cited in Handler, Cases on Trade Regulation (3rd ed. 1960), p. 272, n. 2. We think it is plain that Simplicity's conduct in the instant case cannot give rise to tort liability.

Since the injunction cannot be sustained under Section 16 of the Clayton Act or supported by traditional equitable principles, we conclude that the lower court's order must be reversed.