

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 11, 1970

Honorable Oscar H. Mauzy                Opinion No. M- 746
Chairman, Senate Committee
   to Study the Texas Tort       Re:  Whether certain insurance
   Claims Act                          companies have violated
Texas Senate                                 Antitrust laws of the state
Austin, Texas                                or Federal government in
                                             the sale of insurance to
                                             certain political subdivi-
                                             sions under the Texas
                                             Torts Claims Act, under
Dear Senator Mauzy:                          the facts submitted?

     You have requested our opinion as to,

     "Whether certain insurance companies
have violated either the State or Federal
Antitrust laws in the sale of insurance to
certain political subdivisions under the
Texas Torts Claims Act, under the facts
submitted?"

The facts submitted to this office in connection with this
request are as follows:

     A survey by your committee of certain counties,
cities, school districts, water districts, junior and senior
colleges and State agencies in Texas, dated October 7, 1970
resulted in 699 of such governmental subdivisions replying
to the survey, reporting a total purchase of $2,756,449.00
worth of bodily injury liability insurance coverage.  One
hundred sixty seven of these 699 counties, cities and school
districts reported the purchase of $92,328.00 worth of
property damage liability insurance coverage and the survey
indicates that these 167 entities, at some time during the
last year, in order to secure the needed bodily injury lia-
bility coverage, had been required by some 57 different named
insurance companies and agencies, to purchase this property
damage liability insurance which is alleged to be unnecessary

and worthless since the Texas Torts Claims Act excludes property damage liability for all Texas governmental units while making such units liable only for bodily injury caused by the negligence of a governmental employee.

The 167 entities were composed of 25 cities, 25 counties, 115 school districts, one water district and one junior college. Each of these 167 entities was located and marked on a map and there is no localized pattern or particular area of the State more affected than other areas, but they were widely dispersed geographically throughout the State.

There were 473 of the political bodies which answered this survey who bought bodily injury liability insurance without being required to buy property damage liability coverage. These entities were also located and marked on a map and this group is also widely dispersed geographically throughout the State with at least 40 of these political entities physically located in the same place as one or more of the 167 entities reporting that they were required to buy the property damage liability insurance in order to secure bodily injury liability insurance. None of the remaining 127 entities of the 167 group is located farther than 50 miles from a political subdivision reporting the purchase of bodily injury liability coverage alone.

Out of the 57 named insurance companies or agents who were reported to require property damage liability coverage of the 167 reporting entities, at least 46 of these companies or agents were reported in this same survey to have sold bodily injury liability insurance alone to one or more other reporting political entities. The remaining 11 named insurance sellers by their names appear to be four local agencies making only one reported sale and seven insurance companies, none of which were reported on this survey to have sold insurance to more than two of the reporting entities.

We are advised by the Deputy Assistant Administrator of the State Board of Insurance that no evidence of any combination, conspiracy or agreement among the insurance companies named in this survey has come to that agency's attention, and that on September 22, 1970, the State Board of Insurance gave notice to the public generally and to all insurance companies, corporations, exchanges, mutuals, reciprocals, associations, Lloyds or other insurers writing automobile insurance in Texas and their agents and representatives, as follows:

"The Senate Committee To Study the Texas Tort Claims Act has furnished the State Board of Insurance a file of governmental units that allegedly have been required to purchase property damage liability insurance as a prerequisite to securing the bodily injury liability insurance desired by the Texas Tort Claims Act.

"Since the Texas Tort Claims Act did not waive governmental immunity for damage to property, the Board has held that a company's action requiring the insured to accept property damage liability insurance (which is of no specific benefit to the insured) is a violation of the insurance rating laws of Texas generally and is specifically a violation of Automobile Series 428, dated August 12, 1969.

"The State Board of Insurance hereby directs each insurer to refund the total property damage liability insurance premium or premiums written for a governmental unit that purchased liability insurance for protection from the hazards created by the Texas Tort Claims Act, provided that the particular governmental unit concerned requests the premium return."

The Insurance Board has not been advised of any governmental unit requesting the referred to premium return that has been refused by the insurer.

The Antitrust laws of Texas codified at Section 15.01 et. seq., Business and Commerce Code prohibits "monopolies" as narrowly defined in Section 15.01, "trusts" as defined in Section 15.02 and "conspiracies to restrain trade" as defined in Section 15.03. The monopoly prohibition is a combination or consolidation of two or more corporations and no facts in this case indicate such activity. A combination, essential to the formation of a prohibited "trust" or prohibited "conspiracy in restraint of trade", cannot exist

unless two or more persons or business entities combine in some fashion and before such combination being independent and capable of acting in competition with one another. State v. Fairbanks-Morse & Co., 246 SW 2d 647, (Tex. Civ. App. 1952, ref. n.r.e.). The facts submitted do not reflect any such prohibited combination.

The application of the Federal Antitrust Laws to the facts submitted must be viewed in reference to the Insurance Antitrust Moratorium Act (McCarran-Ferguson Insurance Regulation Act) 15 U.S.C.A., Secs. 1011-1015 (1945). Section 1012 provides that:

> "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, that after June 30, 1948 the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

but this provision is qualified in Sec. 3(b) of the same Act, 15 U.S.C.A. Sec. 1013, by declaring:

> "Nothing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation."

Since the facts presented here show no "agreements" between the insurers, we must look at the "acts" of the insurance companies, i.e. requiring the purchase of property damage liability insurance by certain political subdivisions before they would sell bodily injury liability insurance to such entity. If the "acts" of the insurance companies do not amount to "boycott, coercion or intimidation" and the State has regulations covering the activity concerned (as we assume that they do as contended in the State Board of Insurance

Notice dated September 22, 1970, as set out above), then no cause of action under the Federal Antitrust Acts would lie and any aggrieved party must look to his state statutes and regulations for his remedy. Parker v. Brown, 317 U.S. 341, (1940-1943 Trade Cases); The Travelers Insurance Co. v. Blue Cross of Western Pennsylvania, 298 F. Supp. 1109 (1969 Trade Cases).

Assuming arguendo that the independent acts of the insurance companies constituted a "boycott, coercion or intimidation" and that the Sherman Act is applicable to the fact situation posed, we can immediately eliminate the possibility of a violation of Section 1 of the Sherman Act, 15 U.S.C.A. Sec. 1, because there is no combination, agreement or conspiracy in restraint of trade alleged or shown, which is a necessary element of a Section 1 violation. House of Materials, Inc. v. Simplicity Pattern Co., 298 F. 2d 867 (2nd Cir., 1962).

A monopoly violation of Sec. 2 of the Sherman Act, 15 U.S.C.A. Sec. 2, presupposes monopoly power in a particular market defined as the power to control prices or exclude competition. Hiland Dairy, Inc. v. Kroger Co., 402 F. 2d 968 (8th Cir. 1969). With the described dispersion of the number of insurance sellers and the obvious inability of any one of them alone to exercise any monopoly power, no violation of this antitrust prohibition is alleged or shown herein.

Finally, if an assumption is made that the acts of the insurance companies and agents in "tying" the property damage liability insurance to the sale of bodily injury liability insurance is not regulated by State law, then we have two other possible Federal Antitrust laws to examine as to their applicability to these facts. The first of these is price discrimination between different purchasers of "commodities" of like grade and quality as prohibited by the Robinson-Patman Act 15 U.S.C.A. Sec. 13(a). This has reference to "products" as distinguished from "services", Baum v. Investors Diversified Services, Inc. 409 F. 2d 872, (C. A. , Ill., 1969), and therefore insurance sales are not encompassed in this federal antitrust law. The second and final possible federal antitrust law to be reviewed is the Clayton Antitrust Act, 15 U.S.C.A. Sec. 14, which typically applies to "tying arrangements", but it only applies to the sale or lease of, ". . . goods, wares, merchandise, machinery, supplies or other commodities" and such things as the lending of money

and the sale of services has been held not to be included in the covered class and it appears clear that insurance is not covered therein. U.S. v. Investors Diversified Services, Inc., 102 F. Supp. 645 (D. C., Minn., 1952).

It is, therefore, our opinion, based on the facts submitted, that there has been no violation of the Antitrust laws of the state or federal government, and our opinion is limited to that consideration.

### S U M M A R Y

Based on the facts submitted, there is no violation of the Antitrust laws of the state or federal government in the sale of insurance to certain political subdivisions of the State of Texas under the Texas Tort Claims Act.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Wayne R. Rodgers
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
Robert Owen
Pat Bailey
Gordon Cass
Ralph Rash

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant