Muriel DIAMOND, Plaintiff,

v.

WORLD NEWS CORPORATION, E. G. Viles, K. R. Murdoch, R. R. Dittrich, Richard Sarazen, Marty Singerman, Gerard Fragetti, Edward R. Zemlock, John Doe, Richard Roe, John Doe Corporation and Richard Roe Corporation, Defendants.

No. 81 Civ. 1657(MEL).

United States District Court,
S. D. New York.

July 7, 1982.

I. Ben Greenman and Sidney H. Zuckerman, New York City, for plaintiff.

Squadron, Ellenoff, Plesent & Lehrer, New York City, for defendants News Group Publications, Inc., E. G. Viles, K. R. Murdoch, R. R. Dittrich, Richard Sarazen, Marty Singerman, Gerard Fragetti and Edward R. Zemlock; Slade R. Metcalf, Stuart Bondell, New York City, of counsel.

LASKER, District Judge.

The instant action arises out of Muriel Diamond's attempt to publish an advertise-

ment for her anti-smoking pamphlet in *The Star*, a weekly publication. Through Diana Love, a media consultant, Diamond submitted an order for an advertisement to run in the October 10, 1978 issue of *The Star*. Having been informed that the October 10th issue was overbooked, Love agreed to place the ad in the October 17th issue. Love was later informed that *The Star* would be unable to run the ad in the October 17th issue either. Love contends that she was told by two agents of *The Star*[1] that *The Star* would not accept the ad because its anti-smoking nature would offend the tobacco companies who are major advertisers. (Deposition of Diane Love, at 50, Exhibit M to Affidavit of Slade Metcalf). Love wrote to *The Star*'s advertising director, Edward Zemlock, complaining of their handling of the Diamond ad (letter of September 12, 1978, Exhibit A to Affidavit of I. Ben Greenman, attorney for plaintiff). Zemlock contacted Love soon after and offered to run the ad in November or December. Diamond rejected the offer, having already placed the ad in the *National Enquirer*.

Diamond complains that *The Star*'s refusal to run her ad resulted from an agreement between *The Star* and the tobacco companies not to publish anti-smoking advertisements. She contends that the alleged agreement violates Section 1 of the Sherman Act, 15 U.S.C. § 1, and the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13. Diamond also makes pendent claims under New York's Donnelly Act, N. Y. General Business Law, § 340, and the common law of tortious breach of contract.

Defendants move for summary judgment arguing that the undisputed facts disprove the existence of the alleged agreement, and that, in response, plaintiff has offered only the sheerest of speculation in support of her claim. Plaintiff answers that summary judgment is inappropriate because she has adduced sufficient circumstantial evidence to raise a genuine issue of fact concerning the existence of the agreement.

■ Under Section 1 of the Sherman Act, a plaintiff must demonstrate the existence of some contract, combination or conspiracy in restraint of trade. A defendant's unilateral decision not to deal with a particular customer is not a violation of the Act. *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *House of Materials, Inc. v. Simplicity Pattern Co.*, 298 F.2d 867 (2d Cir. 1962); *Harlem River Consumers Cooperative v. Associated Grocers*, 371 F.Supp. 701, 709 (S.D.N.Y.) (Pierce, J.) *aff'd* 493 F.2d 1352 (2d Cir. 1974). Plaintiff must demonstrate that defendants conspired or agreed with a third person or persons to refrain from carrying anti-smoking ads; a unilateral decision not to do so, even if motivated by an attempt to please another party, is not actionable.

■ In support of its denial that such an agreement existed, defendants have submitted copies of advertisements which have run in *The Star* for products which claim to help people quit smoking, as well as a number of articles which have appeared in the paper critical of the practice of smoking. (Affidavit of Edward Zemlock, Exhibit A). In addition, defendants have submitted the affidavit of *The Star*'s advertising director, Edward Zemlock, who states that he never made an agreement with the tobacco advertisers that *The Star* would not accept anti-smoking ads. (*Id.*, ¶ 11). Moreover, he points out that *The Star* offered to carry plaintiff's ad in the November or December issues. (*Id.*, ¶ 9). Finally, he states that he never told Love that plaintiff's ad had been rejected because it contained anti-smoking information, but rather that space for the requested issues had simply been overbooked. (*Id.*, ¶ 10).

---

1. Love states that she spoke to two individuals from *The Star*'s mail-order advertising representative; Edwin Kabakow, the president of the advertising representative, and a woman who is identified only as "Rosemarie." Plaintiff deposed Kabakow, who stated that he did not recall being told that *The Star* had a policy against accepting anti-smoking ads (Deposition of Edwin Kabakow at 52–53, Exhibit P to Affidavit of Slade Metcalf) and that he did not recall telling Love that the reason the ad had been rejected was because of its anti-smoking content. (*Id.* at 22–23). Defendants represent that Rosemarie has since deceased.

Plaintiff contends that despite defendants' denials, a genuine issue of fact is presented by Love's letter and by the fact that *The Star*'s refusal to carry the ad would be against its economic self-interest unless the alleged agreement had existed. Love does not assert that she was told that *The Star*'s refusal to carry the ad was due to any agreement. Thus, even if *Star* employees had truthfully told Love that *The Star* did not accept anti-smoking ads, that is not sufficient to support plaintiff's claim, because a unilateral refusal to deal, for any reason, is not actionable under Section 1. Moreover, plaintiff's contention that it can be assumed from a policy of refusal to deal that a company has entered into *an agreement* to refuse to deal is without merit. No evidence of any agreement has been set forth, and to simply infer that the alleged agreement existed, would be, on this record, sheer speculation.

Moreover, plaintiff's argument that defendants acted contrary to their economic interest in rejecting the ad is equally without merit. It is hardly in accord with the economic interest of a newspaper to run ads for which it has no space.

 Where a defendant presents evidence contradicting a plaintiff's allegations, the plaintiff cannot rest on its pleadings, but must present "some significant probative evidence in support of its complaint." *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 839 (2d Cir. 1980), *citing* Fed.R.Civ.Pr. 56(e). It is important to note that plaintiff has had the benefit of substantial discovery. Pursuant to plaintiff's demand, defendants have produced over 200 letters between *The Star* and various tobacco companies, as well as other documents. In addition, plaintiff has deposed *The Star*'s advertising director and the president of *The Star*'s mail order advertising representative. Yet in response to defendant's motion, plaintiff has been able to offer only her allegations and speculation.[2] As the Supreme Court stated in *First National Bank v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968): "we are not prepared to extend [a litigant's] rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." Plaintiff here has presented only her allegations and speculation, which are insufficient to defeat defendants' motion on the Sherman Act claim.

Plaintiff's other claims are without merit. The Robinson-Patman Act does not apply to the sale of newspaper advertisements. *Ambook Enterprises v. Time Inc.*, 612 F.2d 604, 609 (2d Cir. 1979) *cert. dismissed*, 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980). Having determined that the federal claims are entirely without substance, it would be inappropriate to continue to exercise pendant jurisdiction over the state claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Defendants' motion for summary judgment is granted. Furthermore, we find that the complaint is without merit, and that there was no reasonable basis for plaintiff or her counsel to have believed that it had merit. Accordingly, the complaint is dismissed with costs.

It is so ordered.

---

2. Plaintiff also asks for additional time to conduct further discovery, including a deposition of K. R. Murdoch, on the grounds that Murdoch must know about the conspiracy because he received a copy of Love's letter. (Plaintiff's Offer of Proof at 3). Plaintiff's argument is frivolous. The fact that Love's letter indicates a carbon copy to Murdoch does not even establish that he received it, much less that he knows of any conspiracy. Moreover, as indicated above, plaintiff has had an adequate opportunity to conduct discovery in this action, and if she has been able to produce so little evidence with so much discovery, on such a small point, there is no reason to believe that further discovery would not be a similar waste of everyone's time.